In the Matter of NIAGARA MOHAWK POWER CORPORATION, Petitioner, v PUBLIC SERVICE COMMISSION, Respondent.

Third Department, May 10, 1984

**APPEARANCES OF COUNSEL**

*LeBoeuf, Lamb, Leiby & MacRae* (*Samuel M. Sugden, Halcyon G. Skinner, Bruce V. Miller* and *Nancy I. Ruskin* of counsel), for petitioner.

*David E. Blabey* (*Howard J. Read* of counsel), for respondent.

**OPINION OF THE COURT**

MAHONEY, P. J.

During the period 1881 through 1961, petitioner and its predecessors operated hydroelectric plants on the Niagara

River pursuant to a license from the Federal Power Commission. Under New York law, petitioner's right to divert water (along with its obligation to return the water) was a recognized property right known as a corporeal hereditament (see *Federal Power Comm. v Niagara Mohawk Power Corp.,* 347 US 239, 246-247). After a 1950 treaty between the United States and Canada substantially increased the amount of water each Nation was permitted to divert, Congress began debate over whether power development along the river should be undertaken by a private utility or by the Power Authority of the State of New York (PASNY). Petitioner was supporting a plan whereby it would undertake the power development when, in 1956, a series of rockslides destroyed most of its generating facilities along the Niagara River, reducing generating capacity by about 80%. Petitioner and PASNY then agreed to a plan whereby petitioner would surrender its license and water rights to PASNY in exchange for PASNY's promise to sell to petitioner the same amount of power petitioner generated prior to the rockslides. Petitioner also sold its real property and buildings to PASNY. Congress passed legislation effectuating this agreement (71 US Stat 401, Pub L 85-159). Petitioner contends that it lost about $11.4 million on this transaction and, in 1956, petitioned the Public Service Commission (PSC) to amortize the loss for the purpose of passing it along to the ratepayers. Petitioner inexplicably withdrew this request voluntarily three years later.

Taking the position that its water rights had been rendered obsolete by the enactment of the statute, petitioner sought to deduct the value of the water rights (determined by petitioner to be worth about $25.7 million) on its income tax returns for the years 1957 through 1962. Although petitioner took the deductions on its Federal tax returns, it did not consider such deductions in reporting its Federal income tax expenses to the PSC for the purpose of determining its rates. Thus, rates were calculated as if the deductions were not taken. The Internal Revenue Service (IRS) disallowed the deductions and, in 1972, petitioner was required to pay some $18 million in tax deficiencies plus interest.[1] Petitioner challenged the determination of

---

1. It must be kept in mind that the value of any deduction for the purpose of reducing tax liability is dependent on the tax rate of the taxpayer. For the years in question,

the IRS and, eventually, in 1981, received a refund of $9.9 million.[2]

Petitioner notified the PSC of receipt of the refund and petitioned, pursuant to 16 NYCRR 89.3, to retain it. The PSC initiated a hearing, pursuant to subdivision 2 of section 113 of the Public Service Law, to determine whether, and to what extent, the refund should be passed on to the ratepayers. Petitioner argued that it should be allowed to retain the refund while the Department of Public Service (department) took the position that the entire refund must be passed on to the ratepayers. After a hearing, the administrative law judge recommended that the refund be shared equally. The PSC adopted this recommendation in an order issued March 24, 1983. Petitioner commenced this CPLR article 78 proceeding to review such order and the proceeding has been transferred to this court for disposition.

Subdivision 2 of section 113 of the Public Service Law provides that whenever a public utility receives from any source a refund of amounts paid, the PSC shall have the power, after a hearing, to determine whether such refund should be passed on, in whole or in part, to the consumers. Petitioner contends that this refund should not be considered alone, but in the context of the entire transaction with PASNY. Petitioner's theory is that it lost $11.4 million on that transaction and that the refund should be considered a partial offset against that loss. Since petitioner did not directly pass the loss along to the ratepayers, it reasons, the ratepayers are not entitled to share in any part of the refund.

Initially, we reject petitioner's contention that the PSC was bound to rule that it could retain the refund because of a 1961 PSC decision concerning petitioner's rates for that year (*Matter of Niagara Mohawk Power Corp.* [1961], 1 PSC 209). As discussed earlier, when reporting its Federal

petitioner's tax rate was 52%. Thus, a deduction would be worth roughly one half the amount of the deduction.

**2.** The determination of the IRS that petitioner could not deduct the value of the water rights as having been rendered obsolete was not disturbed. Rather, the United States Court of Claims determined that the exchange of the water rights for the contractual right to purchase power was a taxable transaction, as a result of which petitioner was later found to have suffered a loss (*Niagara Mohawk Power Corp. v United States*, 525 F2d 1380).

income tax expense for the purpose of calculating rates, petitioner did not take into account the deduction taken that year for the loss of water rights (about $3.2 million). The County of Erie petitioned the PSC to include the deduction so as to reduce the claimed income tax expense and, accordingly, reduce petitioner's rate base. The PSC denied that request, stating that "[s]uch Federal income tax reduction may be considered as a partial offset to the $10,000,000 property loss which the Company faces upon retirement of its Adams and Schoellkopf plants". While this language appears to support petitioner's contention, language in the contemporaneous rate-setting decision indicates that the deduction was temporarily recorded in a particular account pending settlement of the tax returns involved and the determination of the future use of petitioner's facilities (*Matter of Niagara Mohawk Power Corp.* [1961], 1 PSC 131). The doctrine of *res judicata* is to be applied to an agency determination only if such application is consistent with the nature of the particular administrative adjudication (*Matter of Venes v Community School Bd.*, 43 NY2d 520, 524). The 1961 decision simply held that the deduction claimed in that year for the loss of water rights need not be factored into petitioner's tax expense for the purpose of calculating petitioner's rates. That decision did not represent a final and binding determination that the ratepayers need not share in any loss occasioned by the transaction with PASNY or the tax benefits of any such loss. It is not logical that the PSC would make a final determination regarding the character of the deductions before the IRS even decided whether to allow the deductions and before petitioner even completed the transaction with PASNY. Moreover, the 1961 decision only dealt with the treatment of the deductions for one year. In our view, the PSC properly declined to give *res judicata* effect to the 1961 decision.

Turning to the merits of the proceeding, the PSC adopted the administrative law judge's recommendation that the $11.4 million property loss claimed by petitioner as a result of the transfer to PASNY constituted its "investment" in the refund. The PSC also found that the ratepayers contributed $11.7 million by paying rates from 1957 to

1962 that did not take into account the tax deductions for loss of the water rights. Because of the relatively equal contributions to the refund, the PSC ordered the parties to share the refund equally. In our view, this apparent compromise is arbitrary and capricious and unsupported by the record. It is clear that the refund should not be shared, but should either be retained by petitioner or passed along to the ratepayers.

If petitioner is correct that the refund should be treated as part and parcel of the transaction with PASNY, then the refund is simply a deduction resulting from a property loss and could be considered an offset against such loss. That being the case, the ratepayers would not be entitled to any part of the refund since, by petitioner withdrawing its request to amortize the loss, the ratepayers did not share in the loss. There is some evidence in the record to support this theory. The transfer of the water rights was part of the over-all plan whereby petitioner transferred its real property, buildings and water rights to PASNY in exchange for cash as well as a promise to sell power to petitioner.[3] The Federal Court of Claims found that, despite the fact that the water rights had a zero book value, they did have a discernible worth which petitioner and the IRS later determined was in excess of the value of the contractual right to purchase power from PASNY (*Niagara Mohawk Power Corp. v United States,* 525 F2d 1380). Moreover, while the department challenged petitioner's calculation of its loss at $11.4 million, it appears that petitioner did suffer some loss. If the $6.2 million figure proposed by the department is accepted, the loss is still greater than the net after interest amount of the deduction ($5.6 million).[4] We note that, if the refund is to be retained by petitioner, it must pass along to the ratepayers the costs expended by petitioner, which were paid by the ratepayers, in securing the refund. If the ratepayers cannot share in the refund, certainly they should not bear the cost of acquiring the refund.

3. The agreement provided for the sale of power until January 1, 1990 or, at petitioner's election, until January 1, 2006.

4. The refund of $9,942,928.33 breaks down as follows: (1) refund of $5,623,326.34 related to Federal income tax for the years 1957 to 1962, (2) refund of $1,135,726.58 of interest paid in 1972, (3) interest of $6,863,536.37 paid on items (1) and (2) for the years 1971 to 1981, less (4) Federal income tax of $3,679,660.96 on the interest received.

The record also contains evidence supporting the department's contention that the entire refund should be passed along to the ratepayers. Perhaps most significant, the ratepayers paid higher rates from 1957 to 1962 because the deductions were not figured into petitioner's income tax expenses. The ratepayers, by paying rates as if the deductions were not taken, in effect, subsidized the possibility that the IRS would not allow the deductions. Thus, after it was determined that the deductions were, in part, properly taken, it would seem incongruous to allow petitioner to retain the refund. Additionally, it would appear questionable that petitioner, simply by deciding not to attempt to pass the alleged loss along to the ratepayers, can unilaterally decide to hold the entire transaction with PASNY beyond the ratepayers. The department also raised the suspicion, which petitioner denies, that petitioner may not have suffered a loss as a result of the transaction with PASNY and, for that reason, withdrew its request to amortize the "loss". Based on the record as a whole, we are troubled by the failure of the PSC to explore the inadequately explained rationale for such withdrawal. We are also skeptical of the conclusion of the PSC that, since it appears that the ratepayers contributed $11.7 million in rates during the period 1957-1962 that did not take into account the tax deduction claimed by petitioner during this period for loss of water rights, the refund should be divided equally since petitioner's alleged loss and the ratepayers' tax contributions are roughly equal.

While such a balancing in a difficult matter may seem equitable, we do not think it comports with the facts. Both petitioner and the department advanced detailed proof of the existence, the lack thereof or the amount of petitioner's loss. It is the duty of the PSC to analyze the proof in light of the parties' burdens and reach a conclusion that has a rational basis. In our view, this had not been done.

The determination should be annulled, without costs, and the matter remitted to respondent Public Service Commission for further proceedings not inconsistent herewith.

WEISS and LEVINE, JJ., concur with MAHONEY, P. J.; KANE and CASEY, JJ., dissent and vote to confirm the determination of the Public Service Commission.

Determination annulled, without costs, and matter remitted to respondent Public Service Commission for further proceedings not inconsistent herewith.